MAGEE, Respondent, vs. SMITH, Administrator, Appellant.

*December 16, 1898 — January 10, 1899.*

*Logging contract: Scaling of lumber.*

Plaintiff agreed with defendant's intestate to cut and deliver at a sawmill certain pine timber for $3 per thousand feet, board measure, of the merchantable lumber manufactured therefrom, as determined by a scaler mutually agreed upon, by measuring the lumber as it came from the saw, excluding mill culls, subject however to the supervision of another scaler to be mutually agreed upon in case of dispute. The grading of the lumber by the scaler first agreed upon, which was necessary to the scaling of the merchantable product, was not satisfactory to the defendant's intestate, the dispute being as to what should be excluded as mill culls; and she thereupon, but without plaintiff's consent, designated the inspector of the district to establish the proper grades under the contract. Thereafter the scaler, against the plaintiff's protest, followed the directions of the inspector, instead of acting on his own judgment, but kept track of what he understood to be the disputed lumber, which was piled by itself. *Held,* that no person mutually agreed upon had passed upon the question of what lumber should be excluded as mill culls, and that question was therefore a proper subject for litigation and settlement independent of the scaler's work.

APPEAL from a judgment of the circuit court for Chippewa county: A. J. VINJE, Circuit Judge. *Affirmed.*

Plaintiff agreed with defendant's intestate, Lizzie Smith, to cut and deliver at a sawmill in Ashland county, Wisconsin, the pine timber on certain lands for $3 per thousand feet, board measure, of the merchantable lumber manufactured therefrom, as determined by a scaler mutually agreed upon, by measuring the lumber as it came from the saw, excluding mill culls, subject however to the supervision of another scaler mutually agreed upon in case of dispute. A scaler was mutually agreed upon to scale the lumber as manufactured, but his grading of the lumber, which was necessary to the scaling of the merchantable product, was not satisfactory, whereupon Smith designated the lumber inspector of the district to establish the proper grade under the contract and indicate what portion of the lumber should be excluded from the scale as mill culls. Plaintiff did not consent to the selection of the inspector to establish the grades under the contract, or acquiesce in his work. The scaler, against plaintiff's protest, made to Smith, followed the direction of the inspector, but kept track of the disputed lumber scaled, designating it on his scale sheets as " culls " instead of " mill culls." The amount was 143,307 feet of that class of lumber. There was no dispute from the beginning to the end, between the parties, or thereafter, but that the measurement made by the scaler was correct. The dispute was wholly over what lumber should be classed as worthless, or mill culls, and not included in the scale. The disputed lumber was piled by itself. After the sawing was done there was some attempt made by the parties to settle the controversy, without success. No claim was made that the grading of the lumber, as decided by the lumber inspector, was binding between the parties. The controversy remained open and was the issue, and the only issue, litigated in this action.

Plaintiff brought the action to recover an alleged balance due on the contract, on the theory that the whole of the dis-

Magee vs. Smith.

puted lumber should have been included in the merchantable
scale, and defendant defended upon the ground that none of
it should have been so included, and counterclaimed for some
overpayments, it appearing that more had been paid upon
the contract than to cover the entire cut of lumber, exclud-
ing the disputed class. The defendants established the facts
as stated, and without controversy as to the withdrawal from
the judgment of the scaler of the grading, and as to the
amount of the disputed lumber, and the amount excluding
that. On the remaining question of what portion, if any,
of the disputed lumber should have been classed as merchant-
able, evidence was produced, and on that the issue was sub-
mitted to the jury with the result that 95,538 feet were found
to be of the merchantable class. Judgment was rendered
accordingly, from which defendant appealed, contending on
proper exceptions that the court should have rejected all evi-
dence as to the scale of merchantable lumber, except the
work of the scaler mutually agreed upon, there being no
attempt to impeach that for fraud or mistake; that the sub-
mission to the jury should have included the question of
whether there was a scale made by a scaler mutually agreed
upon; that the case should have been taken from the jury
because there was no evidence to impeach the scale made
by the scaler under the contract; and that there was no
sufficient evidence to support the verdict.

For the appellant there was a brief by *Lamoreux, Shea &
Wright,* and oral argument by *C. A. Lamoreux.*

For the respondent the cause was submitted on the brief of
*Cate, Sanborn, Lamoreux & Park.*

MARSHALL, J. There was no controversy but that there
was a scaler mutually agreed upon, or but that, so far as he
performed duties contemplated by the contract to be per-
formed by him, his decision was final and conclusive, sub-
ject to the supervision provided for in the contract. There-

fore there was no call on that subject for a finding by the jury. Probably, the intent of the parties was, by their contract, to submit the grading of the lumber necessary to a determination of what should be thrown out as worthless, called mill culls, to the judgment of the scaler mutually agreed upon, as a necessary incident of his duty to scale the merchantable lumber. If that intention had been carried out the parties would have been bound by the result the same as by any other part of the scaler's work contemplated by the contract. The difficulty which led to the litigation was that the duty of grading the lumber, by the act of one of the parties to the contract, not consented to by the other, was withdrawn from the scaler and referred to the lumber inspector, and that the scaler, against the protest of plaintiff, followed the inspector's directions instead of acting on his own judgment, keeping track, however, of what he understood to be the disputed class of lumber, thereby enabling the parties to intelligently settle their differences in regard to that at some future time. There was no attempt on the trial to impeach the measurement made by the scaler. That was submitted to without question. It was the work done by the scaler, following the directions of the lumber inspector, and which was withdrawn from the judgment of the scaler, which was the subject of controversy. So the question argued at length in the brief of counsel for the appellant, on points suggested by exceptions found in the record, that the measurement of lumber by a scaler mutually agreed upon cannot be impeached except for fraud or mistake, does not arise in the case. No person mutually agreed upon appears to have passed upon the question of what lumber should be excluded as mill culls. That was, therefore, a legitimate subject for settlement independent of the scaler's work. It was a proper subject for litigation in this suit and for submission to the jury on the evidence produced tending to show where the truth lay. It involved the duty sim-

ply of saying from such evidence, what part, if any, of the 143,307 feet of disputed lumber was not of the class called mill culls. On that the jury said, in effect, that the amount was 95,538 feet. True, the evidence was not such as to enable the jury to determine the amount with exactness, but it furnished much light on the subject, sufficient, as appears, to enable them to come to an intelligent conclusion to a reasonable certainty, that the greater part of the disputed product, and not less than the amount named by them by their verdict, was merchantable lumber. Looking at the evidence as it appears in the record, it is by no means clear and satisfactory, but the weakness of it is not so great that we can say there is no credible evidence to support the conclusion arrived at, and warranting a disturbance of it on that ground.

*By the Court.*— The judgment is affirmed.